Claudia Jane McCoy v. Commissioner.
McCoy v. Commissioner
Docket No. 25359.
United States Tax Court
1951 Tax Ct. Memo LEXIS 56; 10 T.C.M. (CCH) 1019; T.C.M. (RIA) 51315; October 26, 1951
J. B. Fisher, Esq., 512 Kanawha Banking & Trust Bldg., Charleston 1, W. Va., for the petitioner. Lyman G. Friedman, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income tax liability and additions, for the calendar years and in the amounts, in which deficiencies were determined by the Commissioner, as follows: Income Tax
Year
Deficiency
50% Addition
1942
$ 695.53
$ 347.77
1943
2,367.33
1,238.17
1944
2,031.04
1,015.52
1945
956.76
478.38
The deficiencies were *57 determined because of the differences between net income as disclosed by return and as adjusted in the notice of deficiency, as follows: Statutory
Year
Return
Notice
1942
$ 927.00
$ 4,716.06
1943
1,667.10
10,002.84
1944
2,976.08
10,092.01
1945
1,631.23
5,863.68
The returns as filed showed no taxable liability for 1942 or 1943, a tax liability of $403 for 1944, and a liability of $124 for 1945. An amended return for 1943 disclosed net income and victory tax net income of $1,667.10 and tax liability of $109. At trial and upon brief the petitioner specifically admitted the correctness of the Commissioner's adjustment of income for 1944 and 1945, and does not contest his adjustment for 1942 and 1943. This leaves for consideration only three issues: (a) Was the petitioner entitled to dependency exemptions for three minor grandchildren in addition to exemption allowed for a minor child, for the years 1942 to 1945, inclusive; (b) was petitioner entitled to dependency exemption for an adult daughter for the years 1944 and 1945; and (c) has the statute of limitations run for the taxable years 1942 and 1943, against the assessments of tax against petitioner, *58 or were petitioner's returns for the taxable years made with intent to evade tax so that the statute of limitations against assessment has not run, under the provisions of section 276(a) of the Internal Revenue Code, and was any part of the deficiency for each taxable year due to fraud with intent to evade tax, rendering applicable the assessment of an additional 50 per cent of the total amount of such deficiency. Findings of Fact The petitioner is a resident of Williamson, West Virginia. Her Federal income tax returns were filed on a calendar year and cash basis with the collector of internal revenue for the district of West Virginia. The petitioner's income tax returns for 1942 to 1945, inclusive, reported her business as the hotel business. She operated a hotel and restaurant. In 1945 she pleaded guilty in the circuit court of Mingo County, West Virginia, to operating a house of ill fame, and paid a fine and was sentenced to serve a term of seven months in the Mingo county jail and pay a fine of $200 and costs. The court further ordered that she be enjoined and restrained from permitting the use of the Williamson Hotel in the city of Williamson as a *59 house of ill fame and that it be closed for a period of one year or until the further order of the court, and forthwith locked by the sheriff. Liquor sales were made in her hotel. She knew it, and derived income therefrom. The petitioner's returns were prepared by a real estate agent, for the taxable years 1942, 1943 and 1944 and by a local public accountant who was also an insurance agent, for 1945. Neither the real estate agent nor the insurance agent was an attorney or certified public accountant. The returns were prepared upon information furnished by the petitioner. Petitioner executed on February 16, 1949, a consent to the extension of time for the assessment of income taxes for 1945, to June 30, 1950. The notice of deficiency here involved was mailed August 23, 1949. Some time prior to December 31, 1941, petitioner received $2,295.14 as insurance on the life of her husband. He had died in 1930 at a veterans hospital. On December 31, 1941, the petitioner owned a piece of property at Williamson, West Virginia, costing $100 and had $866.96 in the bank and her net worth was $966.96. In 1942 petitioner began to purchase real estate, largely through the real estate agent who *60 made out her income tax returns. She generally made a small down payment, gave notes secured by deeds of trust for the balance of the purchase price, and discharged the notes by small monthly payments. During 1942 she purchased three pieces of property in Williamson, West Virginia, and on December 31, 1942, her net worth was $3,866.70 due in part to the purchases of real estate and the payments made thereon. During 1943 she purchased four pieces of real estate. On December 31, 1943, her net worth was $12,040.58, the increase therein being due in part to the purchase of real estate and the payment of notes on real estate. During 1944 petitioner purchased four pieces of real estate. Her net worth at December 31, 1944, was $21,372.71, being increased in general by the purchases and payments made upon real estate. During 1945 the petitioner purchased three pieces of real estate and on December 31, 1945, had net worth of $23,984.92, the increase therein being due in general to the purchase of real estate and the payments made upon real estate. Petitioner, in general, did not keep books or records of her business transactions. She kept a little day book or record of payments and *61 receipts in the operation of an eating establishment, which covered only a few months. She had no other records when revenue agents examined her affairs in connection with the income taxes here involved. Petitioner at the time of trial was about 49 years of age. Her schooling had ended with the fourth grade. She had no knowledge of bookkeeping. Petitioner's returns for 1942 to 1945 claimed exemption for herself and one dependent minor daughter, Mary Josephine King. At hearing she presented evidence, in accordance with her petition, as to four additional dependents, that is, for three minor grandchildren, Donald McCoy, Claudia Jane Justice and Alice Carol McCoy, as to all taxable years, and for Gladys Justice, an adult daughter, for 1944 and 1945. The petitioner was not sure whether Gladys Justice was married during 1944, or whether during 1944 or 1945 Gladys Justice had any source of income other than petitioner. Gladys worked in Michigan for about a month in 1943 or 1944, and at other places. She supported Gladys to some extent, the time of such support not being shown. Gladys Justice lived at different places during the year 1944. She spent some time with her mother at Williamson, *62 West Virginia. She worked at times but could not say how much she worked or how much her total earnings were during that year. Sometimes she would be away from her mother's home two or three months at a time. She could not say whether she was away from Williamson any time during 1945 and did not know whether she had income during that year other than what her mother gave her. She was not able to give an approximate amount of that income. She did not live with her mother all of the time in 1944 and 1945. She did not know whether she was a married woman during 1944 and 1945. She did not know how much the petitioner had spent on clothes for her, Gladys, during 1944 or 1945. Petitioner paid Gladys' doctor bills but Gladys did not know how much they were. Donald McCoy was 12 years old in 1951, and had lived with petitioner practically all his life, including 1942, 1943, 1944 and 1945. In 1943 and 1944 he visited his mother, not over two or three months. Petitioner supported him. She did not know how much she spent. She contributed money to his support during all the taxable years. Donald's mother got an allotment of $100 a month from his father but was sick most of the time and petitioner *63 helped support her. Donald had no income of his own. Petitioner's granddaughter, Claudia Jane Justice, was born about 1940. She lived with petitioner from 1942 through 1945. No one but petitioner contributed to the child's support during that period, so far as petitioner knew, and the child had no other income so far as petitioner knew. Petitioner's granddaughter, Alice Carol McCoy, was with petitioner most of the time in 1942 through 1945. The child's mother bought some things, such as shoes, for her, and sent her a few packages of clothing of no great value; also sent her birthday presents. Petitioner supported her. She went with Donald to visit their mother. Mary Josephine King, petitioner's daughter, lived with and was entirely supported by petitioner during the taxable years. Petitioner's returns for all taxable years lists only Mary J. King as her dependent. The claim of dependency, as to Mary J. King, was allowed. Petitioner's income was determined by the Commissioner on the net worth basis. The petitioner was contacted on September 23, 1946, by George L. Beatty, special agent for the Bureau of Internal Revenue. Two other revenue agents were also present. Beatty asked *64 petitioner what property she owned and she enumerated four of five pieces of property. She mentioned no others. At a later date she was confronted with a list of 15 properties as owned by her and admitted owning them. On October 3, 1946 she signed a statement under oath that on December 31, 1944, she had $866.96 on deposit in two local banks "and all real estate as of record." The statement was dictated by petitioner's attorney and was signed by her in his presence after her attorney had read it to her and she had looked it over. The only real estate she had of record on December 31, 1941, was about one-half an acre costing $100. She mentioned no other real estate in her name prior to that date. Asked why she had not reported all of her income petitioner said she knew nothing about income and said that any income she did not report would be from bootlegging and that she did not feel as though she should [report] that as it was illegal income and she did not know that illegal income was supposed to be reported. She did not divulge the fact that she had property at Radford, Virginia, until she was confronted with it after the agent had found where the deed of trust was on record. The *65 agent found no assets of the petitioner in the names of her relatives except insignificant bank accounts in the names of her granddaughter and two small accounts in the names of two sons. When the revenue agent first talked to the petitioner she told him that all the records she had would be in the possession of Henry B. James or W. M. Goodman (the real estate agent and the insurance agent). He got records from them, everything they had so far as he knew. The agent discovered records of petitioner's real estate purchases in the office of the county clerk of Mingo County and in Radford, Virginia, and in Pike County, Kentucky. The full consideration was in nearly every case set out in full in the deeds of trust and in the deed records. Petitioner was reasonably cooperative with the revenue agents. The revenue agent never saw any of the petitioner's grandchildren during the numerous times he was at the home or residence of the petitioner. All real estate found by the revenue agents, in which petitioner had an interest, was a matter of public record. Other than the four or five pieces of property about which petitioner told the revenue agent when he first went to see her, she never voluntarily *66 told him of her properties. They had already been discovered from the records. She was advised about her real estate purchases by Henry B. James. Real estate in Williamson, West Virginia, in general, has increased in value since 1942. Petitioner's properties were rented. The petitioner told the revenue agent that whatever property she owned was a matter of public record. She enumerated four or five pieces of property and then told him to find a record of it or see Henry B. James. Petitioner told James that she wanted to purchase real estate and that if he had any good bargains she would be interested. If he got hold of good buildings he would see her about them and she purchased a good many. James in making up her income tax returns asked her how many dependents she had. James saw petitioner with three grandchildren, at her home and on the street, during the years 1942 to 1945. W. M. Goodman, who prepared petitioner's income tax return for 1945, got his information regarding her dependents, from her. On petitioner's amended return for the year 1943 she stated that she had received $2,295 in one payment from insurance because of the death of her husband. This statement is made *67 in explanation of the statement that her income for 1942 was not sufficient to call for the payment of taxes other than Government insurance and compensation on account of the death of her husband. On her return for 1942 there appears the statement "Receives 64.42 insurance per month from U.S. Government (Deceased husband) Not taxible [sic]." Petitioner's returns contained recitations as to ownership of real estate as follows: The return for 1942 - "5 houses"; the 1943 return - depreciation on real estate is claimed as to seven pieces of real property and rental and expenses are reported as to eight pieces of real estate. On an amended return for 1943 depreciation is claimed, and rental and expenses are reported on, ten pieces of real property. The 1944 return: depreciation is claimed on 14 items of real estate and rent and expenses are reported as to 17 items of real estate, including two rented and sub-rented and one listed as "family use." The 1945 return: depreciation is claimed on ten items of real estate with statement that the list supplements Schedule B where property is described as "Various Rentals and Subleases." Petitioner's income tax returns were filed on the dates *68 and for years, as follows: 1942
March 13, 1943
1943
March 15, 1944
1943 (amended)
July 19, 1944
1944
February 10, 1945
1945
April 15, 1946
Petitioner's returns for all of the taxable years were false and fraudulent with intent to evade tax; and the deficiency, for each taxable year, was in part due to such fraud with intent to evade tax. Opinion In this matter we have a plea of the statute of limitations, and though the fraud question raised by respondent will, if sustained, dispose of the limitation question, we will because of the unusual situation, first refer to it. The petition urges the bar of the limitation statute as to all years. The respondent urges fraud preventing its application and, as to the year 1945, also that a waiver was filed extending time for assessment to June 30, 1950, and that the notice of deficiency issued on August 23, 1949, so that the statute had not run. The facts show such filing, therefore the statute has not run as to 1945. Nor has it run as to 1944, for though the respondent does not call attention to section 275(c) of the Internal Revenue Code (providing for assessment within five years from filing *69 of return if the taxpayer omits from properly includible gross income more than 25 per cent of gross income as stated in the return), the petitioner has at trial conceded the accuracy of the respondent's figures as to income for 1944 and 1945 and, on brief, admits such figures as to 1944 and 1945 and says those for 1942 and 1943 are not contested, and since for all years the figures determined omission of an amount much more than 25 per cent of gross income, as stated on the returns, and since, on brief, petitioner urges the limitation statute as to 1942 and 1943 only, we therefore hold that the statute of limitations has not run as to 1944 or 1945, regardless of the fraud issue. Since the return for 1942 was filed on March 13, 1943, the original return for 1943 was filed March 15, 1944, and an amended return filed July 19, 1944, the usual three-year statute had run at date of deficiency notice. Likewise, since as just above recited the respondent's figures, as to amount of income, were either admitted or not contested, as to all taxable years, by the petitioner, it is apparent that except that for the plea of limitations, as to 1942 and 1943 the determinations of deficiency are *70 not in issue, except as to the 50 per cent addition for fraud and so far also as affected by the petitioner's contention for additional dependency exemptions. We therefore next consider the issue as to whether there was, as to 1942 and 1943, within the language of section 276(a), Internal Revenue Code, "a false or fraudulent return with intent to evade tax" so as to permit assessment "at any time," and whether as to all taxable years, within section 293(b), Internal Revenue Code, "any part of any deficiency is due to fraud with intent to evade tax" so as to authorize under that section addition of 50 per cent of the total amount of the deficiency. The respondent, on the issue of fraud, has the burden of proof and must meet that burden by clear and convincing evidence, as petitioner argues. Specifically admitting ignorance and negligence, she contends, properly of course, that neither constitutes the proof of fraud required by the respondent, and that mere failure to report all income in the amounts determined by respondent, and either agreed to or not contested, is no demonstration of more than ignorance or carelessness and not proof *71 of fraud. The respondent, contra, argues, in effect, that there was fraud with intent to evade tax, resulting in part at least in the deficiencies determined, in the concealment of real estate by petitioner in her first conference with the revenue agents, her contention that such real estate was purchased with proceeds of insurance upon the life of her deceased husband when in fact she no longer had such insurance money on December 31, 1941, that she kept no adequate books and records, and that she concealed her income which was from sources including hotel and restaurant business and a house of ill fame, and from bootlegging. We have studied with care the record before us on the subject. The respondent clearly must show fraud, clearly and convincingly. Insofar as he relies on concealment of real estate from the revenue agents when they first interviewed petitioner, we think he has failed in his proof; for in that respect the proof does not involve the filing of the return, within section 276(a); and within section 293(b), we can not see that any part of the deficiency was due to the fraudulent concealment alleged in such non-disclosure. We so hold for the reason that though the *72 petitioner told the revenue agents, at the first conference, of only four or five pieces of real estate, the conference was in 1946, and petitioner's returns, filed long before, had disclosed ownership of much more real estate than the four or five pieces. Her return for 1942 recited income from "5 houses," though not otherwise described. Her return for 1943 claims depreciation and expenses and reports income upon ten items of real property, while the amended return for 1943 claims depreciation on seven items of real estate and reports income and claims expenses on eight pieces of real estate. The return for 1944 claims depreciation on fourteen, and reports rent and expenses on seventeen, pieces of real estate, two of which are recited to be rented from others, and rerented, and one to be "family use." The return for 1945 claims depreciation on ten items of real estate. Under such facts we think the respondent overworks the idea of fraud in petitioner's telling of only four or five pieces, even assuming that she did not in referring to public records, negative attempt to conceal her property. Obviously lack of concealment of ownership of real estate is disclosed by the previous returns. *73 The revenue agents could hardly have been ignorant of the returns. The evidence is that they knew, at the time of her statement, of the other property, and the returns appear as likely source of their information. No proof of fraud is found in concealed real estate. We therefore proceed to examine other evidence on the fraud issue. Petitioner's income, as determined by respondent and admitted or not contested by petitioner, was, because of lack of records, determined on the net worth basis. This method has been so often approved as not to require citation of authorities. What was the source of such income? In part it was from the real estate. With what income was the real estate purchased; and was the income so used, and not reported, fraudulently concealed? Obviously, the fact that the ownership of real estate was not concealed does not mean that the petitioner did not conceal income which went into such real estate, and which she did not report. Petitioner attempted to explain the source as originating in life insurance on her deceased husband. But she had received, according to her own statement, on the amended return for 1943, only $2,295 in a lump sum from such insurance. It *74 was received prior to December 31, 1941. Yet, according also to petitioner's own statement, under oath, signed in the presence of her attorney, she had in the bank only $866.96 on December 31, 1941. [1] We conclude that the life insurance was not the source of payment for the many pieces of real estate owned by the petitioner. In addition, she was in the business of hotel and restaurant keeping and operating a house of ill fame. She pleaded guilty thereto in October 1945 in the circuit court of Mingo County, West Virginia, and the place was ordered locked by the sheriff. This fact is considered, not as bearing upon reputation, but as indicating an illegal and concealed source of unreported income. Along the same line, petitioner, according to her statement to the revenue agent, had income unreported by her from bootlegging, and she did not "feel as though she should [report] that as it was illegal income and she did not know that illegal income was supposed to be reported." Her explanation of this testimony by the revenue agent was not convincing. Though denying that she herself sold whiskey, she stated that "they" brought whiskey there (to her hotel) for people; and elsewhere she *75 had stated, in answer to the question whether she knew of the whiskey being gotten: "I guess I did. I didn't go out and get it myself, though." She admitted that "these people" - those who got the whiskey for people - probably worked in her building. We have considered all of the facts placed before us here. Though the disparity between the amount of income reported and actual income is not conclusive, and as petitioner points out in some cases, has not been considered sufficient evidence of fraud, it is evidence on the issue, and has been weighed with the other proof. We need not, we think, further detail the evidence. After examination of all the evidence, we conclude and hold that it has been shown clearly and convincingly that the petitioner's returns for all of the taxable years were false and fraudulent with intent to evade tax, preventing running of the statute of limitations, and that a part of the deficiency for each *76 taxable year was due to fraud with intent to evade tax, rendering proper the addition to the deficiencies of 50 per cent of the total amount thereof. This leaves for consideration the question as to whether petitioner is entitled to credit for dependents in addition to the one dependency credit claimed in the returns for the taxable years, 1942 to 1945, inclusive. As to the alleged dependent, Gladys Justice, the petitioner makes the claim for additional dependency exemption only as to 1944 and 1945. We are therefore separately considering such contention. The evidence fails to convince us that the petitioner has shown herself entitled to the credit as to Gladys Justice. Gladys was petitioner's adult daughter who had been married and neither the petitioner nor Gladys knew whether she was a married woman during the years 1944 and 1945. Gladys worked to some extent at least, in Michigan and neither the petitioner nor Gladys was able to state to what extent the petitioner supported her daughter - other than the blank statement that she did support her - or to what extent Gladys had other income. Since the years just here being considered are 1944 and 1945, it is necessary for the petitioner *77 to show that the gross income of the alleged dependent was less than $500 as well as to show that more than half of the dependent's support was received from the taxpayer. Section 25, Internal Revenue Code, as amended by Revenue Act of 1943. We think it obvious that this showing has not been made and the claim as to Gladys for 1944 and 1945 is denied. The petitioner though claiming only one dependent, her daughter, Mary J. King, in all of her returns for the taxable years, in her petition and upon brief claims three additional dependents (in addition to Gladys), that is makes claim for three minor grandchildren, Donald McCoy, Alice Carol McCoy and Claudia Jane Justice. We have considered the evidence adduced on the point. No reason was shown by the evidence as to why only one dependent was originally claimed if there were in fact three others. In addition it was developed that the children spent some of the time elsewhere than in petitioner's home and that the mother of the McCoy children received an allotment or payments from her husband who was in the military service and purchased some things for the children. Claudia Jane Justice was apparently the daughter *78 of Gladys Justice though the evidence is not clear. Other than petitioner's statement that she was the sole support of these children, which is disproved by her further evidence, we find the proof unsatisfactory and uncertain. The burden is of course on the petitioner. Under all of the facts, which need not be set forth here in detail, we have concluded and hold that it is not shown that the petitioner was entitled to credit because of the dependency of the three grandchildren in addition to the one minor daughter as to whom the claim was allowed by the respondent. Decision will be entered for the respondent as to all taxable years. Footnotes
1. The amended return for 1943 and the petitioner's sworn statement and testimony constitute the evidence relied on to find the amount and date of receipt of the lump sum insurance. A letter introduced, from the Veterans Administration, is not considered.↩